STATE of Missouri, Respondent,

v.

Donald OBERG, Appellant.

No. WD 31170.

Missouri Court of Appeals,
Western District.

Aug. 4, 1980.

Thomas J. Cox, Jr., Kansas City, for appellant.

John Ashcroft, Atty. Gen., Earl W. Brown, III, Asst. Atty. Gen., Kansas City, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

PER CURIAM.

Defendant was found guilty by a jury of illegal possession of more than thirty-five grams of marijuana (Sections 195.020 and 195.200, RSMo Supp. 1975) and his punishment was fixed at confinement in the county jail for one year and a fine of $1,000.00.[1] The marijuana which defendant was

1. Although the offense occurred in Clay County, the case was tried in Ray County on change of venue.

charged and found guilty of illegally possessing was obtained by a warrantless search.

Defendant duly appealed, and in pressing this court for relief relies on two grounds of alleged error. One of the grounds, error on the part of the trial court in overruling his motion to suppress the marijuana and in admitting it into evidence because the warrantless search by which it was obtained was proscribed by the Fourth and Fourteenth Amendments to the Constitution of the United States, becomes the focal point of review as it is dispositive of this appeal. Regarding this critical issue, the state rejoins by seeking to uphold the constitutionality of the warrantless search on one or all of three grounds—search by consent, search of a motor vehicle, or that defendant had no reasonable expectation of privacy in the contents of the receptacles which were searched.

Evidence adduced at the hearing on defendant's motion to suppress will be dealt with at length because judicial determination of whether a warrantless search is constitutionally inoffensive turns on the "concrete factual context of the individual case". *Sibron v. State of New York*, 392 U.S. 40, 59, 88 S.Ct. 1889, 1901, 20 L.Ed.2d 917, 932 (1968). The cardinal significance of the facts on a case to case basis cannot be minimized because all warrantless searches, subject only to certain well delineated fact oriented exceptions, are per se constitutionally offensive. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

Unfortunately, the facts to be reckoned with in this case are somewhat sketchy in certain respects and the brunt of any hiatuses falls on the state as it bore the burden of overcoming the warrant requirement of the Fourth Amendment. *Coolidge v. New Hampshire*, supra; and *United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951).

As disclosed by the record, several days prior to March 4, 1978, a "special investiga-tor" assigned to the metropolitan Kansas City area "Drug Enforcement Task Force" received a tip from a "reliable informant" that a shipment of marijuana was scheduled to arrive at the informant's house in Avondale, Clay County, Missouri. The informant had previously worked with the special investigator on numerous occasions and had been reimbursed for expenses incurred in doing so; as a matter of fact the informant was "registered" with the federal government as an "informant" and his official designatory number as such was SL17X007. The informant acquired his information from the defendant two or three days before March 4, 1978, when defendant contacted the informant and secured informant's consent to bring a shipment of "Columbian marijuana" which was being flown into Kansas City to the informant's home for the purpose of being "cleaned, bagged, and moved to a different place for pickup for distribution". The special investigator, in anticipation of the arrival of the shipment of marijuana, was in contact with the informant, by telephone and in person, throughout the day of March 3, 1978. Arrangements were made to place the informant's home under surveillance and it was agreed that a light on informant's carport would be turned off to signal arrival of the marijuana. During the afternoon of March 3, 1978, defendant advised the informant that the shipment would arrive that day. Defendant also advised the informant that he needed some cardboard boxes of a certain size to fill one particular customer's order. According to the informant, the defendant came by his house at 9:00 P.M. on March 3, 1978, and told him that the shipment had arrived and that the next time informant saw defendant he would have the marijuana with him. At that time the defendant also gave the informant some cardboard boxes which informant stored in the kitchen of his home. The special investigator had defendant under surveillance at the time. The defendant returned to the informant's house around 1:00 A.M. on March 4, 1978, and told informant the shipment was there. About that time defendant's accom-

plice pulled up in a "van" and parked it in the carport. Sliding glass doors adjoining the kitchen of the house were opened and defendant and his accomplice, assisted by the informant, started transferring certain "containers" from the van to the kitchen. According to the informant, defendant, referring to the containers, said "the marijuana is here". Defendant's accomplice was inside the van passing the containers to defendant, and defendant in turn passed the containers to the informant who was stacking them along the kitchen wall. At approximately 1:00 A.M. on March 4, 1978, the special investigator called informant from a pay telephone booth in Avondale to check on the shipment. Upon being advised by the informant that the shipment had arrived, the special investigator and a large contingent of officers proceeded to the informant's home. The carport light was off and the van was observed parked in the carport. The left side of the van was parallel to the sliding glass doors located on the side of the house. The cargo door was on the opposite side of the van. When the officers approached the van, the special investigator observed the defendant outside the van by the cargo door and defendant's accomplice inside the van. The special investigator also observed some "large type containers contained in white plastic inside the van" and shortly thereafter observed "similar containers inside the house". He also observed a number of cardboard boxes, both in the van and inside the house. Defendant and his accomplice were placed under arrest by the officers before the unloading process was completed and taken into the kitchen of informant's house at which time informant was also placed under arrest.[2] After the three were arrested and taken into custody, the officers then seized the "large type containers contained in white plastic" and placed them under their exclusive control. All of the containers seized by the officers were sealed. Although the officers, based on information supplied by the informant, had probable

cause to believe that marijuana was in the sealed containers, none was visible to the officers, nor was there any suggestion that any odor characteristic of marijuana was detected by olfaction. The informant specifically disclaimed any ownership or interest in the containers or their contents. After defendant, his accomplice, and the informant were placed under arrest, and after all of the containers, both in the kitchen of the house and in the van, were seized and securely placed under the exclusive control of the officers, the officers proceeded to break the seals on the containers to confirm their suspicion that they contained marijuana.

The Fourth Amendment itself is the fountainhead of all search and seizure questions: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Myriad cases handed down by the Supreme Court of the United States stand as judicial testimonials that the Fourth Amendment does not interdict all warrantless searches, but, instead, proscribes those which are "unreasonable". If such were not true, no warrantless search could ever be sustained under the Fourth Amendment. Although the dividing line between "unreasonable" and "reasonable" warrantless searches cannot be drawn with mechanical precision, a vast body of case law touching the subject projects a composite picture of reliable guidelines to assist in determining on which side of the line a particular warrantless search falls.

The unyielding purpose of the Fourth Amendment is to protect individuals from unreasonable invasions of legitimate privacy interests at the hands of government. *United States v. Chadwick*, 433 U.S. 1, 11, 97 S.Ct. 2476, 2483, 53 L.Ed.2d 538

---

**2.** Whether doing so was initially prompted by some notion of protecting informant's cover as a "registered" informant is unclear. Moreover, the record fails to disclose whether any criminal charge was ever filed against the informant.

(1977); and *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886). A reasonable expectation of privacy in an area or object which is the subject of a warrantless search inextricably becomes a valid consideration. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). Under appropriate circumstances, voluntary consent given to officers to conduct a warrantless search is equivalent to a disavowal of any legitimate expectation of privacy in an area or object being searched. In the same vein, items in plain view under appropriate circumstances negate any legitimate expectation of privacy. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed. 1067 (1968). Probable cause coupled with the existence or presence of exigent circumstances, under carefully prescribed limitations, may save a warrantless search from constitutional condemnation, even when directed towards places or items vested with legitimate expectations of privacy. However, probable cause standing alone, where a legitimate expectation of privacy exists, cannot square a warrantless search with the mandate of the Fourth Amendment prohibiting "unreasonable searches". *Arkansas v. Sanders, supra;* and *United States v. Chadwick, supra*. At the risk of engaging in over-simplification, and apart from considerations of probable cause, the implicit rationale for justifying warrantless searches incident to arrest, as evidenced by *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and warrantless searches of motor vehicles, as evidenced by *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) and *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), is the existence or presence of exigent circumstances. Personal protection of officers and prevention of the destruction of evidence are the exigent circumstances which vindicate warrantless searches incident to arrest. *Chimel v. California, supra*. The inherent mobility of the motor vehicles (aside from a diluted expectation of privacy) is the exigent circumstance which vindicates warrantless searches of automobiles. *Chambers v. Maroney, supra*; and *Carroll v.*

*United States, supra*. Reliance upon exigent circumstances as a saving factor is tightly circumscribed by pragmatic temporal and spatial requirements. The underlying rationale for doing so regarding warrantless searches incident to a lawful arrest is self-evident—once the subject of an arrest is immobilized to the extent that any potential weapon or item of evidence is beyond his reach, any initial, justifiable exigent circumstances fade away and disappear and searches beyond that point are constitutionally offensive. *Chimel v. California, supra*. Realistic temporal and spatial requirements setting perimeters for determining the existence or non-existence of exigent circumstances come into sharp focus in *Arkansas v. Sanders, supra*, and *United States v. Chadwick, supra*, cases collaterally involving motor vehicles. In *Chadwick*, officers had probable cause to believe that a locked "footlocker" taken from the trunk of a taxicab contained narcotics. A warrantless search of the "footlocker" was conducted after it came under the exclusive control of the officers. Timewise, exigency was assessed in light of all the attendant circumstances and found wanting when the search occurred—"the Warrant Clause places the line [between permissible and impermissible warrantless searches] at the point where the property to be searched comes under the exclusive dominion of police authority." 433 U.S. at 15, 97 S.Ct. at 2486. Any supposition of exigency was dispelled since the "footlocker" in question was under the exclusive control of the officers when the search was undertaken, and that fact, coupled with recognition that the arrested suspect had a reasonable expectation of privacy in its contents, resulted in the contents of the "footlocker" being declared the product of a constitutionally proscribed warrantless search. In *Sanders*, officers had probable cause to believe that an unlocked suitcase belonging to the occupant of a cab contained marijuana. The cab was stopped, the occupant was detained, and his suitcase was removed from the trunk of the cab and searched on the spot without the benefit of a warrant. Finding that the owner of the unlocked

suitcase was entitled to a reasonable expectation of privacy in its contents, and drawing upon the spatial and temporal requirements for assessing exigency set forth in *Chadwick*, the court held the warrantless search constitutionally impermissible: "Where—as in the present case—the police, without endangering themselves or risking loss of the evidence, lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay the search thereof until after judicial approval has been obtained. In this way, constitutional rights of suspects to prior judicial review of searches will be fully protected." 99 S.Ct. at 2594. Two fundamental, controlling principles course through *Chimel, Chadwick* and *Sanders*—probable cause alone does not constitute an exigent circumstance and preceding exigent circumstances which subsequently become dormant lack constitutional vitality to sustain a warrantless search. The majority opinion in *Sanders*, in discussing the validity of the suspect's reasonable expectation of privacy in the unlocked suitcase, observed as follows, 99 S.Ct. at 2593, footnote 13: "Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. . . ."

Defendant staunchly maintains that the uncontradicted facts immediately surrounding the search of the sealed containers, in light of *Sanders* and *Chadwick*, unswervingly point in one direction—an "unreasonable" warrantless search in terms of the Fourth Amendment. It should be specifically noted that defendant makes no claim or contention that his arrest and seizure of the sealed containers were constitutionally objectionable. The warrantless search of the sealed containers, after he was arrested and after the sealed containers came under the exclusive dominion and control of the officers, is the sole target of his constitutional attack.

As previously noted, the state attempts to salvage the warrantless search on one or all of three grounds, to wit, a consensual search, search of a motor vehicle or the absence of any justification on defendant's part of a reasonable expectation of privacy in the sealed containers or their contents. Unfortunately, both sides address these crucial issues in sweeping generalities without any attempt to galvanize applicable constitutional tenets with the attendant facts.

The state's attempt to advance consent as justification for this warrantless search finds no factual support whatsoever. Although the evidence demonstrates that the officers who conducted the search were lawfully upon premises owned and controlled by the informant with his consent, the latter disclaimed any individual or joint proprietary interest in or right of control over the sealed containers or their contents. There is simply no evidence that informant possessed a sufficient interest in the sealed containers and their contents which would have legally enabled him to consensually bind defendant regarding the warrantless search that ensued. In this connection, attention is directed to the holding in *United States v. Wilson*, 536 F.2d 883, 884–85 (9th Cir. 1976), *cert. denied* 429 U.S. 982, 97 S.Ct. 497, 59 L.Ed.2d 592 (1976): "Although McKee could effectively consent to the agents' search of her apartment, she had neither actual or apparent authority to consent to the suitcase searches. She disclaimed any ownership of or possessory interest in them. She had neither the 'common authority' over nor the 'mutual use' of the suitcases that could give constitutional validity to her consent. (*United States v. Matlock* (1974) 415 U.S. 164, 171 & n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242; see *Corngold v. United States* (9th Cir. 1966) 367 F.2d 1, 6–8.)" See also *United States v. Block*, 590 F.2d 535 (4th Cir. 1978) and *State v. Pinegar*, 583 S.W.2d 217 (Mo.App.1979). Moreover, no evidence exists that the informant, either by word or deed, purported to consent to the warrantless search of the sealed containers themselves. The untenability of consent by the informant as justification

for the warrantless search is so patently demonstrated by the record that it need not be pursued further.

 The state's contention that the search can be justified under the motor vehicle exception flies in the face of *Arkansas v. Sanders, supra*, and *United States v. Chadwick, supra*, and totally ignores the fact that any exigent circumstances which justified initial seizure of the sealed containers faded into legal oblivion once the suspects were arrested and the sealed containers came under the exclusive dominion and control of the officers. Moreover, the state's reliance on the motor vehicle exception is totally misplaced because as carefully pointed out in the concurring opinion in *Arkansas v. Sanders, supra*, "[t]he relationship between the automobile and the contraband was purely coincidental, as in *Chadwick*", 99 S.Ct. at 2595. The mere fact that some of the sealed containers were still in the van when the warrantless search occurred cannot be relied upon by the state as a nostrum for its validation. One unassailable truth persists throughout this case—no exigent circumstances existed when the sealed containers were opened by the officers. Parenthetically, the special investigator in charge of the operation testified that he believed that a magistrate was available at the time to issue a search warrant if one had been sought. The state does not suggest that an immediate search of the sealed containers was necessary to thwart continuing criminal activities on the part of the suspects, or that any supposed confederates were lurking in the immediate vicinity, or that the contents of the sealed containers were exposed to any imminent danger of destruction.

 The state questions any reasonable expectation of privacy on defendant's part in the sealed containers so as to entitle him to the full panoply of protection afforded by the Fourth Amendment. The argument advanced by the state in support of this position is murky at best. If properly distilled, the state appears to argue that unchallenged grounds constituting probable cause for defendant's arrest and seizure of

the sealed containers in the first instance ipso facto destroyed any reasonable expectation of privacy in the contents of the sealed containers. This is a flawed argument because the very fact that the containers were sealed connoted a reasonable expectation of privacy in their contents. To succumb to the state's argument that the existence of probable cause to believe that containers or receptacles of whatever kind, luggage or otherwise, contain contraband ipso facto destroys any reasonable expectation of privacy in their contents is indefensible in light of the constitutional tenets spelled out in *Arkansas v. Sanders, supra* and *United States v. Chadwick, supra*. The same legal logic which rejects the naked status of probable cause as an exigent circumstance, likewise rejects its naked status as destructive of a reasonable expectation of privacy. Otherwise, the existence of probable cause would destroy any reasonable expectation of privacy under every conceivable circumstance and make a mockery of the Fourth Amendment. The state does not argue that the presence of marijuana could be inferred from the outward appearance of the sealed containers, thereby depriving defendant of any expectation of the Fourth Amendment protection. According to the record, the sole purpose of the officers in breaking the seals on the containers and exploring their contents was to confirm their suspicion that they contained marijuana. Once the information supplied by the informant constituting probable cause for arrest of the suspects and seizure of the sealed containers is blacked out, as it must be, the full impact of the realization that there was nothing about the outward appearance of the sealed containers from which the presence of marijuana could be inferred is forcibly driven home. There is not one scintilla of evidence in the record that the containers under consideration, based upon the experience of the testifying officer, were of a type commonly employed for transporting marijuana in bulk quantities. As disclosed by photographs introduced at the hearing on defendant's motion to suppress, the sealed containers, from all outward appearances, were of

a type commonly employed to transport innumerable kinds of bulk commodities. It cannot be said that the containers themselves telegraphed their contents.

 The unsavory reality that defendant was unlawfully in possession of a quantity of marijuana at the time does not push him out from under the protective umbrella of the Fourth Amendment. Warrantless searches proscribed by the Fourth Amendment are not determined on an after the fact basis depending upon what a search reveals, but, instead, are governed by the facts as they exist at the time the search is undertaken without regard to what is subsequently revealed. The suppression of evidence resulting from unlawful searches is neither designed to frustrate those charged with the enforcement of our laws nor to shield the guilty. Doing so is nothing more or nothing less than judicial compliance with the positive mandate of the Fourth Amendment that all citizens, the guilty and innocent alike, shall not be subjected to unreasonable searches and seizure. As eloquently stated in *McDonald v. United States*, 335 U.S. 451, 453, 69 S.Ct. 191, 192, 93 L.Ed. 153 (1948), "[t]his guarantee of protection against unreasonable searches and seizures extends to the innocent and guilty alike . . . [i]t marks the right of privacy as one of the unique values of our civilization and, with few exceptions, stays the hands of the police unless they have a search warrant issued by a magistrate on probable cause supported by oath or affirmation . . . [a]nd the law provides as a sanction against the flouting of this constitutional safeguard the suppression of evidence secured as a result of the violation, when it is tendered in a federal court." What was said there is equally applicable in state court proceedings by reason of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Although case law is written by the courts, the Fourth Amendment was written by the people and they are the repository of the power to rewrite it if they see fit to do so. The fact that they have not seen fit to do so and have kept it intact throughout a sometimes turbulent case history stands as a fitting testimonial to their innate wisdom.

It is not the prerogative of this court to reconstrue the Fourth Amendment in areas already addressed by the Supreme Court of the United States—ours is the solemn duty of faithfully applying the Fourth Amendment as already construed by the Supreme Court of the United States. Under the authority of *Arkansas v. Sanders, supra*, and *United States v. Chadwick, supra*, this court is constrained to find and hold that the warrantless search complained of was constitutionally impermissible and the trial court erred in overruling defendant's motion to suppress and in admitting the marijuana into evidence.

Since there is no way that the state can made a submissible case against defendant as charged in the information absent use of the marijuana ferreted out by the constitutionally impermissible warrantless search, the judgment is reversed and the defendant is ordered discharged.