**STATE of Missouri, Plaintiff–Appellant,**

v.

**Randall GLISSON, Defendant–Respondent.**

No. 24575.

Missouri Court of Appeals,
Southern District,
Division Two.

July 31, 2002.

Richelle Christensen, Pros. Atty., Maries County, Vienna, for appellant.

Vernon R. Dawdy, Lofftus & Dawdy, Fenton, for respondent.

JOHN E. PARRISH, Judge.

The state appeals the trial court order granting Randall Glisson's (defendant) motion to suppress evidence. *See* § 547.200.1(3), RSMo 2000. This court reverses and remands with directions.

■■■ Appellate review of a trial court ruling granting a motion to suppress evidence is limited to the determination of whether the evidence was sufficient to support the trial court finding. *State v. Kriley*, 976 S.W.2d 16, 19 (Mo.App.1998). The trial court ruling granting the motion will be affirmed if the evidence would support the ruling on any ground alleged in the defendant's motion. *Id.* The ruling will be reversed only if the trial court ruling was clearly erroneous. *Id.*

Defendant was charged in the Circuit Court of Maries County, Missouri, with manufacture of methamphetamine, a controlled substance, and trafficking drugs in the second degree. §§ 195.211.1 and 195.223.9(1), RSMo Cum.Supp.1999. The Motion to Suppress Physical Evidence that is the subject of this appeal was directed to items seized from defendant's residence following a search of those premises.

On February 9, 2000, Maries County Deputy Sheriff Marvin "Buddy" Thompson received a call from Michael Todd reporting a burglary at property owned by his father, Forrest Lee Todd. Deputy Thompson investigated the incident. He made a list of items of property that were reported stolen. Michael Todd called Deputy Thompson a second time to report that he had been watching defendant's house with binoculars; that he observed someone at defendant's property carry items that had been taken from his father's property into defendant's residence. He identified the item he saw taken into the residence as a rifle.

Deputy Sheriff Buddy Thompson and Deputy Sheriff Shannon Thompson went to defendant's residence to investigate. A third officer, Deputy Sheriff Chambers, arrived after the first two officers. When the officers arrived, they observed a man next to a red car in the front driveway to the house. Deputy Shannon Thompson approached the man and obtained his driver's license. Deputy Thompson handed the license to Deputy Chambers and asked him to run a warrant check. Deputy Shannon Thompson returned to his car when he noticed that the man from whom he had taken the driver's license had gone inside the house. He went to a basement door and knocked but got no answer. He tried the doorknob and found it locked. Deputy Shannon Thompson reported to Deputy Buddy Thompson that the person whose license he had taken had gone in the house and locked the door; that he had not waited for the return of his driver's license.

Deputy Buddy Thompson went to the front of the house. He was asked what he observed. He answered, "Well, the first thing is, it was February the 9th and it was cold. I remember it being very cold. And all the windows in the house were open. And there was a tremendous strong smell of ether."

Deputy Buddy Thompson went to the front door of the residence and knocked. Defendant's son came to the door. Deputy Thompson asked if defendant was there. Defendant's son said he was and turned away from the door. Defendant came to the door. Deputy Buddy Thompson was asked the following questions and gave the following answers concerning what occurred:

Q. .... What happened next?

A. I told him why I was there, and asked him for consent to search. And he pretty much—his exact words were,

"F[___] you," and he turned off and took running.

Q. Okay. What did you do at that point?

A. I went in the door, down the steps, flipped the knob on the door, and went into a small room in the basement.

Q. So you entered his home.

A. Yes.

Q. Why did you enter his home?

A. Because with what Mr. Todd had told me about his weapons being there in the residence, I did not want any property destroyed. With the smell of the ether, I thought there was the possibility of some illegal substance there, and I did not want that destroyed as well.

Deputy Buddy Thompson went down some steps and unlocked the door where Deputy Shannon Thompson was standing. Deputy Shannon Thompson entered the dwelling. The two deputies went into a small room in the basement of the house. They found three people in the room. One was defendant. Defendant was reaching to the top of a gun cabinet. He was told to get his hands down. The three were handcuffed and brought to the front porch of the house.

Deputy Shannon Thompson was asked if he noticed anything specific about the house while he was standing outside the basement door before the other deputy sheriff opened it from the inside. He answered, "I noted that most of the windows were open inside the residence and I could smell ammonia and ether." He stated he knew from his training and knowledge that ether was "used in a couple stages of the production of methamphetamine." He said his training had indicated that there could be a smell of ether if methamphetamine was present as a finished product.

Deputy Buddy Thompson and Michael Todd returned to the sheriff's office where they applied for a search warrant for defendant's residence. Deputy Shannon Thompson remained at defendant's residence with the people who had been detained. They were outside until a woman who had been in the house, Lisa Smith, said she was asthmatic and was starting to be sick from being outside. They then moved into the kitchen area of the house. Deputy Shannon Thompson was asked how long they waited for the warrant. He answered, "We took everybody out of the residence at about—between 5:30 and a quarter to six, and the search warrant arrived at about quarter to ten."

The state asserts the trial court erred in granting defendant's motion to suppress evidence. They argue there was no search or seizure without a warrant; that the warrantless entry that occurred was made because of exigent circumstances and there was no seizure of evidence prior to obtaining a search warrant. Defendant argues the trial court found "there was a warrantless entry upon defendant's premises which produced evidence which gave rise to the police seeking a search warrant based upon such evidence illegally obtained."

 Appellate courts defer to findings of fact made by trial courts, but make an independent evaluation of conclusions of law a trial court draws from the facts before it. *State v. Kriley, supra.* "Where there is no dispute as to the underlying facts, the determination of the reasonableness of a search and seizure, under the Fourth Amendment, is a question of law." *Id.* There was no conflicting evidence in this case; thus, the ultimate determination concerning the reasonableness of the officers' actions in this case is a question of law which this court reviews *de novo. Id.*

*See also U.S. v. Scroger,* 98 F.3d 1256, 1259 (10th Cir.1996).

■ In assessing facts with similarities to those in this case, the 10th Circuit explained in *U.S. v. Scroger, supra:*

> "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). Therefore, absent consent or exigent circumstances, police may not enter a citizen's residence without a warrant. *Id.* at 590, 100 S.Ct. at 1382....

> "[T]here is no absolute test for the presence of exigent circumstances because such a determination depends on the unique facts of each controversy." *[United States v.] Wicks,* 995 F.2d [964] at 970 [ (10th Cir.), *cert. denied,* 510 U.S. 982, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993) ] (internal quotations omitted)....

In assessing circumstances to determine if they were exigent, the circumstances are evaluated on the basis of how they would have appeared to prudent, cautious and trained officers. *Id.* at 1259.

■ When the deputies arrived at defendant's residence, they encountered an individual outside the residence who they undertook to identify and check for outstanding warrants. Upon receiving the person's driver's license, the individual promptly departed the officers' presence and entered the residence, apparently locking the door where he entered. This could be perceived as an attempt to warn occupants of the house of the presence of law enforcement personnel. Deputy Sheriff Buddy Thompson and Deputy Sheriff Shannon Thompson both observed windows to the residence open, even though it was a cold February day, and the odor of ether, a substance associated with methamphetamine manufacture.

Deputy Buddy Thompson was at the front door of the residence. He was told defendant was there and waited for him to come to the door. After defendant appeared and was asked if he would consent to a search of the premises, defendant took off running. Under these circumstances, this court concludes that there were exigent circumstances warranting the officers' entry into the house to secure the premises and permit them to obtain a search warrant. They had reason to believe there was evidence of illicit drug manufacture or possession. They had reason to believe there were weapons present that could be used to harm them.

The officers conducted a protective sweep of defendant's residence. Upon locating the individuals who were present, they removed them to secure the premises until a search warrant was obtained. After the search warrant was obtained, a thorough search of the residence revealed weapons and other items reportedly taken in the burglary at the Todd residence, together with a quantity of methamphetamine and cash totaling $2,711.

■ The officers' entry onto defendant's property was lawful. *See State v. Edwards,* 36 S.W.3d 22, 27 (Mo.App.2000); *State v. Kriley,* 976 S.W.2d at 21–22. There were exigent circumstances justifying the initial warrantless entry into the residence in order to secure the premises. The record before the trial court revealed no search of the premises until after the search warrant was obtained. The evidence did not support granting defendant's motion to suppress evidence. The order granting the motion was clearly erroneous and is reversed. The trial court is direct-

ed to enter its order denying the motion to suppress evidence.

GARRISON, P.J., and PREWITT, J., concur.