DON E. BURRELL, P.J.
The State appeals the trial court’s order sustaining David Kevin Holman’s (“Defendant”) motion to suppress statements he made to law enforcement.[1] The State’s single point claims the trial court erred in granting Defendant’s motion “because Defendant did not unequivocally assert his Fifth Amendment right to counsel, in that Defendant only refused to sign [aj consent to search form without an attorney but did not otherwise refuse to communicate with the police.” Because the police honored Defendant’s unambiguous, limited invocation of his rights, we reverse the challenged order and direct the. trial court to enter an order denying Defendant’s motion to suppress. ■ •
Standard of Review
We review the grant of a motion to suppress to determine whether sufficient evidence supports the trial court’s ruling, State v. Glisson, 80 S.W.3d 915, 917 (Mo. App.S.D.2002), and will reverse only if the ruling was clearly erroneous. Id. “When the issue to be decided involves the constitutional protection against forced self-incrimination, our review of the trial court’s *815 ruling is a two-part inquiry: we defer.to the trial court’s determinations of witness credibility and findings of fact, but consider the court’s conclusions of law de novo.” State v. Norman, 431 S.W.3d 563, 568-69 (Mo.App.E.D.2014) (internal quotations omitted).
Because the trial court decided the motion on stipulated facts, we review de novo whether the trial court drew the proper legal conclusions from the stipulated facts. Cf. State v. Avent, 432 S.W.3d 249, 253 (Mo.App.W.D.2014).
Stipulated Facts[2] & Trial Court’s Ruling
At approximately 12:00 a.m. on December 10, 2013, RaDonna Holman (“RaDon-na”) shot Defendant in the back of the arm with a .40 caliber handgun. Defendant returned fire and struck RaDonna with what turned out to be a fatal shot. Defendant began CPR on RaDonna and dialed 9-1-1.
Lawrence County Deputies Ryan Devost (“Deputy Devost”) and Michael Thom (“Deputy Thom”) arrived at the residence. After completing a protective sweep, Deputy Devost placed Defendant in handcuffs and removed him from the residence. Deputy Devost informed arriving paramedics that' Defendant had been shot. As RaDonna’s injuries were more serious, the paramedics first provided care to • her. Deputy Devost placedL Defendant in a patrol car to await treatment. .
The paramedics' éxited the residence, and Deputy Thorn escorted Defendant to an ambulance to be examined. Deputy Devost, who had been taping off the scene, went to the ambulance and spoke with Defendant. Deputy Devost read Defendant his Miranda[3] rights and asked him to sign a form granting the officers consent to search his home. To that inquiry, Defendant responded, “I ain’t signing shit without my attorney.” Defendant was not asked any additional questions that day.
Deputy Devost advised detectives on scene that he had read Defendant his Miranda rights and relayed Defendant’s response when asked to sign a consent to search form. Defendant was then transported to Mercy Hospital in Springfield and treated for his wound.
Upon his discharge from the hospital, Defendant' was taken to ■ the Lawrence County jail. The following morning, Lawrence County Detective Linda McElroy (“Detective McElroy”) retrieved Defendant from his jail cell, réad him his Miranda rights and asked Defendant if he understood those rights. Defendant said that he did, and he continued to speak with Detective McElroy.[4] Defendant did not *816 execute any document or otherwise acknowledge in writing that he was waiving his constitutional rights, and Defendant had not attempted to initiate any communication with the police after being taken to the jail. Defendant was subsequently charged with first-degree murder, see section 565.020, and armed criminal action, see section 571.015.
In granting Defendant’s motion to suppress, the trial court found that Defendant’s statement, “I ain’t signing shit without my attorney” indicated that he would not consent to anything without the benefit of having an attorney present. The trial court based this conclusion on the fact that Defendant did not “affirmatively pronounce any exceptions to his invocation[.]” The State now timely appeals that decision.[5]
Analysis
The sole issue for our determination is a question of law: whether Defendant’s statement, “I ain’t signing shit without my attorneyf,]” when given in response to a request to sign a consent to search form, constituted an objective, unambiguous, unequivocal, and specific request for counsel that prohibited officers from interrogating Defendant the next morning without an attorney present.[6]
To protect the privilege against self-incrimination guaranteed by the Fifth Amendment, the police must terminate their interrogation of an accused in custody if the accused requests the assistance of counsel. The accused must make an objective, unambiguous, unequivocal, and specific request for counsel to invoke his Fifth Amendment right to counsel. The desire to have counsel present must be sufficiently and clearly articulated so that a reasonable police officer under the circumstances would understand the statement to be a request for an attorney. The accused cannot be subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. Law enforcement officials may not restart interrogation without counsel present regardless of whether the accused has consulted with his attorney. However, if the statement of a *817 desire to have counsel present fails to meet the requisite level of clarity for police officers to understand it as a request for an attorney, the officers are not required to stop questioning the accused.
Norman, 431 S.W.3d at 569 (internal quotations and citations omitted).
The accused may also invoke a qualified right to counsel that is limited to the circumstances set forth by the accused. Connecticut v. Barrett, 479 U.S. 523, 528, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987). If authorities honor that qualified invocation, they may otherwise question an accused without offending the Fifth Amendment. Id. at 529-30, 107 S.Ct. 828. Generally, alleged invocations of counsel should be interpreted broadly in favor of the accused, but police officers are not required to interpret a limited request as an assertion of a general unlimited right to counsel. Id. “Interpretation is only required where the defendant’s words, understood as ordinary people would understand them, are ambiguous.” Id. at 529, 107 S.Ct. 828.
Here, an ordinary person would have understood that Defendant was simply refusing to sign the consent to search form without an attorney present. See U.S. v. Martin, 664 F.3d 684, 685-86, 689 (7th Cir.2011) (finding invocation was unambiguous and limited to written statements where the defendant was asked if he would provide a written statement to officers and responded, “I’d rather talk to an attorney first before I do that”).
“Although the courts ensure compliance with the Miranda requirements through the exclusionary rule, it is police officers who must actually decide whether or not they can question a suspect.” Davis v. U.S., 512 U.S. 452, 461, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). “The Edwards [v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) ] rule—questioning must cease' if the suspect asks for a lawyer—provides a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information.” Id. “Edwards requires courts to determine whether the accused actually invoked his right to counsel.” Davis, 512 U.S. at 458/ 114 S.Ct. 2350 (quotations omitted). “To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry!,]” id. at 458-59, 114 S.Ct. 2350 (citing Barrett, 479 U.S. at 529, 107 S.Ct. 828), which we view from the perspective of a reasonable police officer under the circumstances. State v. Haslett, 283 S.W.3d 769, 784 (Mo.App.S.D.2009). “[T]he likelihood that a suspect would wish counsel to be present is not the test for applicability of Edwards.” McNeil v. Wisconsin, 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).
“The rationale underlying Edwards is that the police must respect a suspect’s wishes regarding his right to have an attorney present during custodial interrogation.” Davis, 512 U.S. at 460, 114 S.Ct. 2350. In this circumstance, where Defendant has not clearly articulated his desire to have an attorney present during custodial interrogation and police have honored Defendant’s limited invocation of counsel, neither Edioards nor Barrett is offended.
Defendant argues that Barrett’s recognition of a limited invocation of counsel was premised on the defendant making an affirmative statement as to the manner in which he was not invoking his right to coúnsel (i.e., that Barrett required the defendant to state that he would engage in verbal communication with police, in addition to the defendant’s statement that he would not make a written statement with *818 out an attorney).[7] While Defendant’s factual assertion is true regarding the statements made in Barrett, the holding in the case was not premised on the addition of such language.
To the contrary, if the specific limitation is not ambiguous, it is sufficient to demonstrate that the accused was not unwilling to speak with officers. See Martin, 664 F.3d at 689. See also U.S. v. Mohr, 772 F.3d 1143, 1146 (8th Cir.2014) (finding no Fifth Amendment violation where officers asked the defendant if they could record an interview, defendant stated he wanted his lawyer if police were going to record the interview, and police proceeded with an unrecorded interview); U.S. v. Ivy, 929 F.2d 147, 152-53 (5th Cir.1991) (finding unambiguous, limited invocation where the defendant stated he would not answer questions on a particular subject without first talking to his lawyer and police continued questioning on other subjects); U.S. v. Boyer, 914 F.2d 144, 146 (8th Cir. 1990) (finding ordinary meaning of the defendant’s request for an attorney before he would assist police in making a tape-recorded telephone call to a person whom he had sent drugs was that the defendant’s invocation of counsel only applied to making a tape-recorded phone call).
Here, the stipulated facts reveal that Defendant was asked if he would sign a form that would give law enforcement permission to search Defendant’s home, and Defendant responded by saying that he would not sign anything without his attorney. Under these circumstances, “[t]o conclude that [Defendant] invoked his right to counsel for all purposes requires not a broad interpretation of an ambiguous statement, but a disregard of the ordinary meaning of • [Defendant’s statement.” Barrett, 479 U.S. at 529-30, 107 S.Ct. 828.
The State’s point is granted, the trial court’s order suppressing Defendant’s statements is reversed, and the trial court is directed to enter an order denying the motion.
NANCY STEFFEN RAHMEYER, J.— DISSENTS IN SEPARATE OPINION
WILLIAM W. FRANCIS, JR., J.— CONCURS

. Section 547.200.1(4) grants the State an interlocutory appeal from an order suppressing a confession or admission. All statutory references are to RSMo 2000.

.We agree with the dissenting opinion’s statement that under a clearly erroneous standard of review, we defer to the trial court’s factual findings "even where they are based on physical or documentary evidence which is equally available to an appellate court.” State v. Williams, 334 S.W.3d 177, 181 (Mo.App.W.D.2011). But that deferential standard of review is not applicable in this case. The dissenting opinion's assertion that a question of fact exists in the instant case is inconsistent with the Statement of Facts in Defendant’s brief, the first sentence of which states: "At the hearing on the [mjotion to [s]uppress, the parties stipulated to the facts presented to the [trial court.]” Because no material facts are in dispute, this case, as discussed, infra, presents solely a legal question that we review de novo.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).

. Evidence of when Defendant left the hospital, whether he hád been admitted or received outpatient care,- when he arrived at the jail, and when Detective McElroy began her questioning is not included in the record. The sequence of events as asserted by Defendant in his suggestions supporting his motion to suppress is as follows:
*816 Upon being discharged from Mercy Hospital [Defendant] was taken to the Lawrence County jail. At approximately 11:30 AM [Detective] McElroy [Retrieved [Defendant] from his jail cell, advised him of his constitutional rights per Miranda and asked if [Defendant] understood such rights. [Defendant] responded "yes,” and then [Detective] McElroy began questioning him.
What Defendant actually said during the interview is also not apparent from the record. The following colloquy during the motion hearing probably explains why.
BY [the prosecutor]: Now, then [Defendant] goes into making statements on where he was standing and what happened. Do you want me to go into the detail of all that?
BY THE COURT: I don’t know if the content of the statements matter. What I need is how the approach was made.

. Under section 547.200.4, the State was required to file its notice of appeal within five days of the trial court’s order. The State filed its notice of appeal with the Supreme Court of Missouri the day after the trial court’s order was entered. Our high court subsequently transferred the cause to this court.

. The State also argues—for the first time in this appeal—that Defendant was not being "interrogated” for the purposes of Miranda, and that, consequently, any invocation of counsel at that time was premature. Because this argument was not presented to and decided by the trial court, we do not consider it. See State v. Stone, 430 S.W.3d 288, 291 (Mo.App.S.D.2014).

. Defendant makes the same argument regarding State v. Hunter, 840 S.W.2d 850„ 870 (Mo. banc 1992). Similar to Barrett, Hunter does not stand for the proposition that an affirmative statement is required as to the manner in which the defendant was not invoking his right to counsel. Cf. State v. Blackman, 875 S.W.2d 122, 137 (Mo.App.E.D. 1994) (citing Barrett and Hunter and finding ' no Fifth Amendment violation where invocation was limited to learning, whether the defendant’s attorney had successfully "recalled” a warrant in an unrelated case, despite the defendant malting no affirmative statements as to how he would speak with police).