**STATE of Missouri,**
**Plaintiff/Respondent,**

v.

**Thomas E. HOOPINGARNER,**
**Defendant/Appellant.**

**No. 61394.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 12, 1993.

John Brooks Gourley, Clayton, for defendant/appellant.

William L. Webster, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

CRANE, Judge.

A jury found Thomas E. Hoopingarner guilty of the offense of first degree burglary in violation of § 569.160 RSMo 1986. The trial court found him to be a Class X offender and sentenced him to a term of 18 years imprisonment. Hoopingarner appeals the judgment of the trial court. On appeal Hoopingarner contends that the trial court erred in overruling his motion to suppress identification testimony, admitting evidence of his prior guilty pleas and giving MAI–CR 3d 312.10, the "hammer" instruction. We affirm.

The sufficiency of the evidence is not in dispute. On April 28, 1990 the victim was alone in her half of a two-family duplex in St. Louis County. She was lying on her couch and could see the basement door

about thirty feet away at the end of a corridor. The door was shut and locked with a chain.

At 2:30 a.m. the basement door suddenly burst open. The victim saw defendant standing shirtless with his hand on the basement door. She jumped up and made a noise, which caused defendant to turn toward her so that she got a clear look at his full face. The victim recognized defendant as someone who had lived in her neighborhood for the past seven years, whom she had seen "hundreds of times," but whose name she did not know. She ran outside and called for help. Her next-door neighbor heard her screams, told his wife to call the police, and went outside to the victim, who told him a man was in her apartment. The neighbor saw a shirtless man walking north quickly along the street, recognized him as a neighborhood resident, and called the police himself to tell them a burglary had occurred and the suspect was walking north along his street.

Officer Timothy Schreiber of the St. Ann Police Department responded to the burglary call and saw defendant walking north along victim's street, about four houses north of the victim's house. Officer Schreiber recognized defendant, whom he knew by name, told him there had been trouble down the street, and asked him if he would wait where he was. Defendant replied that he did not mind waiting. Officer Schreiber went down the street and spoke with the victim, who described the intruder. Officer Schreiber then had another officer bring defendant to the victim's residence where she identified defendant.

Defendant's first two points challenge the trial court's denial of his motion to suppress identification. Defendant first contends the trial court committed plain error by not sustaining the motion because the identification was the fruit of an illegal seizure in violation of the United States and Missouri constitutions. He argues that the evidence established that he was illegally arrested without cause when he was asked to stay on the street by Officer Schreiber. Defendant seeks plain error re-

view because he did not raise this ground in his motion for new trial. For his second point defendant contends that the identification should be suppressed because of unduly suggestive circumstances, which rendered both the out-of-court and in-court identifications unreliable.

On a motion to suppress the state bears the burdens of production and persuasion to show by a preponderance of the evidence that the motion to suppress should be overruled. § 542.296.6 RSMo 1986, *State v. Fitzgerald*, 781 S.W.2d 174, 182 (Mo.App.1989). To determine whether evidence should have been suppressed, we may consider the record made at the pretrial hearing, as well as the record made at trial prior to the introduction of the evidence sought to be suppressed. *State v. Collins*, 816 S.W.2d 257, 258 (Mo.App. 1991). The trial court's ruling shall be affirmed unless it is clearly erroneous. *State v. Milliorn*, 794 S.W.2d 181, 184 (Mo. banc 1990). Under this standard we review the factual findings only to determine if they are supported by substantial evidence. *Fitzgerald*, 781 S.W.2d at 182. We view the facts in the light most favorable to the ruling of the trial court, *State v. Blair*, 691 S.W.2d 259, 260 (Mo. banc 1985), and we disregard contrary evidence and inferences. *Fitzgerald*, 781 S.W.2d at 182. When seeking plain error review, defendant bears the burden of establishing that the alleged error results in manifest injustice or a miscarriage of justice. *State v. Berry*, 609 S.W.2d 948, 953 (Mo. banc 1980).

Defendant's claim of unlawful arrest was refuted by a preponderance of the evidence. At trial defendant testified that Officer Schreiber had asked him if he would mind going down the street to be looked at and that defendant voluntarily waited at Officer Schreiber's request, who said he would return for him. Eventually a second officer came up and brought him down the street. Defendant was not handcuffed and there was no evidence that his freedom of movement had been restrained. Rather, the preponderance of the evidence establishes that defendant had not been placed under arrest at the time he volun-

tarily waited and then accompanied an officer to the victim's house for identification. *State v. White*, 770 S.W.2d 357, 360 (Mo. App.1989).

Moreover, an unlawful arrest is not grounds to suppress an identification made at a subsequent show up, line up, photospread, or trial. *State v. Lynch*, 528 S.W.2d 454, 460 (Mo.App.1975). The fruit of the poisonous tree doctrine is inapplicable when the evidence supporting identification emanates from an independent source. *Id.* at 459. A victim's observations made at the time the crime was committed constitutes an independent source. An identification made from those observations is not a product of the arrest. *State v. Whitley*, 743 S.W.2d 482, 484 (Mo.App. 1987). The victim identified defendant based on her observation of him at the scene and her recognition of him as a neighbor she had seen numerous times. *State v. Harris*, 825 S.W.2d 644, 648 (Mo. App.1992). The trial court did not commit error, plain or otherwise, in denying defendant's motion to suppress identification on the grounds of an illegal arrest.

Defendant also argues that the motion to suppress identification should have been sustained because the circumstances relating to the victim's out-of-court identification rendered it unreliable. He points to the facts that the victim had a limited opportunity to view the intruder in her home and that the police brought defendant to her house for identification twenty minutes after the burglary. He also points to discrepancies in the various witnesses' descriptions of the intruder's hair and clothing.

A defendant has a due process right to exclude identification testimony which results from procedures that are unnecessarily suggestive and conducive to an irreparably mistaken identification. *Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967). In determining the admissibility of identification testimony which is alleged to have resulted from unduly suggestive pretrial identification procedures, courts apply a two-prong test: (1) whether the pretrial identification procedure was suggestive; and, if so, (2) the impact the suggestive procedures had upon the reliability of the victim's identification. *State v. Morant*, 758 S.W.2d 110, 117 (Mo.App.1988). Reliability, rather than suggestiveness, is the linchpin in determining the admissibility of identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977); *Morant*, 758 S.W.2d at 117. The trial court determines reliability by looking at the "totality of the circumstances," including 1) the opportunity of the witness to view the accused at the time of the crime, 2) the witness' degree of attention at the time of the crime, 3) the accuracy of the witness' prior description of the accused, 4) the level of certainty demonstrated by the witness when subsequently confronted with the accused, and 5) the length of time elapsed between the crime and the subsequent confrontation. *Id.* An additional circumstance supporting reliability arises where the witness already knows the defendant and recognizes him at the scene of the crime. *Harris*, 825 S.W.2d at 648. We find neither prong of the test was satisfied.

In this case the pretrial identification procedure was not suggestive. Law enforcement officers may allow a victim or other identifying witness to view a freshly apprehended suspect for identification at the scene of a crime or at the scene of an arrest within a short time after the incident. *State v. Ford*, 677 S.W.2d 352, 354 n. 3 (Mo.App.1984); *State v. Overstreet*, 694 S.W.2d 491, 495 (Mo.App.1985). The police may inform the identifying witness that they have a suspect that the witness may be able to identify. *Overstreet*, 694 S.W.2d at 495. If under these circumstances the witness makes an identification of the subject from the witness's own observations and visual recollection of the defendant's appearance, and not as a response to any suggestions or encouragement from police, the identification is not unduly suggestive. *Id.*

Here the officers returned the suspect to the crime scene approximately twenty minutes after the crime. They requested the

victim come out and view defendant as a possible subject. She viewed defendant in her front yard which was illuminated by a street light. The police officers did not say anything to the victim except to ask her to look at the individual. The victim was given adequate time to look at defendant who stood about five feet away from her. She was certain of her identification and testified that she knew defendant was the intruder as soon as she saw him. The circumstances of the confrontation were not unduly suggestive.

Since we have found the identification procedure was not suggestive, we do not need to proceed to analyze whether any allegedly suggestive procedures had an impact upon the reliability of the victim's identification. However, we observe that the totality of the circumstances indicates that the victim's identification was reliable. The victim saw the intruder's face by the light of a lamp for up to thirty seconds when he was about thirty feet away. She recognized him as a man who lived in her neighborhood and whom she had seen hundreds of times over the preceding seven years. Her description of the intruder to police matched the defendant's appearance on the night of the crime. She identified the defendant as the intruder at the scene of the crime only twenty minutes after the crime. The victim was certain of her identification of the defendant as the intruder. The witness made no errors in her description to indicate unreliability. Any inconsistencies between her description of defendant and those of other witnesses are proper matters for cross-examination. *State v. Cody*, 800 S.W.2d 750, 753 (Mo.App.1990). The trial court did not err in denying defendant's motion to suppress identification. Points one and two are denied.

For his third point defendant contends the trial court committed plain error when it allowed the prosecution to read into the record defendant's prior pleas of guilty to felonies when defendant did not dispute, contradict, or attempt to explain the prior pleas. Defendant seeks plain error review because he did not specifically object to this line of questioning by the prosecutor. *State v. Smith*, 703 S.W.2d 50, 51 (Mo.App.1985). Under this standard the plain error complained of must impact so substantially upon the defendant's rights that manifest injustice or a miscarriage of justice will result if left uncorrected. *State v. Hill*, 823 S.W.2d 98, 101 (Mo.App. 1991); Rule 30.20.

The extent of cross-examination of an accused rests within the discretion of the trial court and we will not interfere unless that discretion is clearly abused. *Hill*, 823 S.W.2d at 102. When a defendant testifies, he is subject to cross-examination and impeachment as is any other witness. § 546.260.1 RSMo 1986; *State v. Simmons*, 825 S.W.2d 361, 364 (Mo.App.1992). The prior convictions of any witness, including the accused, are admissible for impeachment purposes. § 491.050 RSMo 1986; *Simmons*, 825 S.W.2d at 364. The trial court has no discretion to prevent the use of prior criminal convictions to impeach the credibility of a witness or the accused. *Simmons*, 825 S.W.2d at 364. In a criminal trial, the state has an absolute right to prove the fact of conviction, the nature of the charge, the place and date of the occurrence, and the sentence imposed. *Id.; Hill*, 823 S.W.2d at 102.

The state may prove a prior conviction either by the record or by cross-examination, the witness must answer any questions relevant to that inquiry, and the cross-examiner "shall not be concluded by his answer." § 491.050 RSMo 1986; *State v. Shisler*, 752 S.W.2d 447, 451 (Mo.App. 1988). A prosecutor is permitted to question a defendant about a prior conviction when the defendant initially fails to disclose the prior conviction. *Shisler*, 752 S.W.2d at 451. Repetition or rephrasing of a question is not improper, so long as the questioning is designed to elicit an answer regarding the fact of an additional conviction. *Id.*

On direct examination defendant testified that he had previously pleaded guilty to seven felony counts of burglary and was sentenced to two years in prison on those counts. On cross-examination defendant initially stated that he had only pleaded

guilty to seven felonies, but after further questioning, defendant admitted that he had also pleaded guilty to eight felony counts for stealing over $150, for a total of fifteen felony guilty pleas. The prosecutor then inquired about the date and nature of each guilty plea and the punishment imposed. The state had an absolute right to elicit that information. *Simmons*, 825 S.W.2d at 364. The trial court did not plainly err in allowing the cross-examination.

In the argument portion under point three of his brief, defendant contends that the state improperly argued defendant's prior convictions as substantive evidence of guilt. This contention has not been preserved for appellate review because defendant did not raise it in the points relied on, Rule 30.06(d)–(e); *Washington v. State*, 772 S.W.2d 728, 729 (Mo.App.1989) and defendant did not object at trial. *State v. McMillin*, 783 S.W.2d 82, 97–98 (Mo. banc 1990).

For his fourth point defendant asserts the trial court erred in giving MAI–CR 3d 312.10, the "hammer" instruction, after limited deliberations and without an indication of jury deadlock. He contends the court failed to follow the "Notes on Use" to that instruction and coerced a guilty verdict by placing a time limit upon further deliberations and telling the jurors they would be held over another day for further deliberations.

■ Defendant has not set forth the instruction he complains of in the argument portion of his brief, thus failing to preserve this point for review. Rule 30.06(e); *State v. Oxford*, 791 S.W.2d 396, 400 (Mo. banc 1990). Nonetheless, since the "hammer" instruction is a standard instruction given by the trial court, we will review his contention for plain error. Rule 30.20; *State v. Harris*, 717 S.W.2d 233, 235 (Mo.App. 1986).

■ The length of time a jury is allowed to deliberate before the trial court gives the "hammer" instruction is within the discretion of the trial court. *State v. Parson*, 815 S.W.2d 106, 107 (Mo.App. 1991). Under the plain error standard, we

will not interfere with the trial court's exercise of discretion absent a clear abuse of that discretion and resulting prejudice to the defendant. *State v. Williams*, 674 S.W.2d 46, 49 (Mo.App.1984).

■ The "Notes on Use" to MAI–CR 3d 312.10 provide that the "hammer" instruction may be given "when the Court deems it appropriate and when the length of deliberation or communication from the jury causes the Court to believe that the jury may be deadlocked." MAI–CR 3d 312.10, Notes on Use 2; *Parson*, 815 S.W.2d at 107. In order to establish an abuse of discretion, defendant must show that, based on the trial record, the jury's verdict was coerced. *Parson*, 815 S.W.2d at 107. The fact that a jury returns a verdict shortly after the "hammer" instruction is given does not establish coercion. *Id.* Furthermore, the instruction itself is not coercive. *Id.* The instruction urges open and frank discussion, tolerance and the desirability of a unanimous verdict, but cautions each juror against basing a verdict on evidence the juror believes is not true. *Id.* Nothing in the record indicates the verdict was coerced or that the trial court, in giving the instruction, was informed whether the jury's numerical split favored conviction.

■ Further, nothing in the record indicates the court failed to follow the "Notes on Use." The court expressly followed each requirement of the "Notes on Use." After the jury had been deliberating for three hours and five minutes, the jury sent a note to the court stating, "At this part [sic] in time we cannot reach a verdict." The court indicated it would bring the jury in and if it believed there was any possibility the jury could reach a verdict, it would give the "hammer." MAI–CR 3d 312.10, Notes on Use 2, allows the court to give the "hammer" instruction when a communication from the jury causes the court to believe that the jury may be deadlocked. In court the jury foreman indicated that he felt that the jury "possibly" could reach a verdict if given more time. Accordingly, the court determined it would give the instruction and gave counsel an opportunity

to object before reading the "hammer" instruction to the jury as required by MAI–CR 3d 312.10, Notes on Use 3. The instruction was numbered, handed to the jury, and subsequently filed with the other instructions in compliance with MAI–CR 3d 312.10, Notes on Use 4. Additionally, the court noted on the record the time the jury first retired to deliberate, the time the court gave the instruction, and the time the jury returned a verdict, as directed by MAI–CR 3d 312.10, Notes on Use 5.

The court gave the "hammer" instruction at 4:20 p.m. The jury delivered its verdict thirty-five minutes later. This is well within the post-instructional deliberation time held satisfactory in other cases. *See Parson,* 815 S.W.2d at 108, and cases cited therein. Nothing in the record indicates the court issued a deadline directing the jury to reach a verdict by a certain time or would hold them over for another day. The court did not clearly abuse its discretion or prejudice defendant by giving the "hammer" instruction. Point four is denied.

The judgment of the trial court is affirmed.

CARL R. GAERTNER, P.J., and CRAHAN, J. concur.