STATE of Missouri, Respondent,

v.

Akimrazie K. KELLY, Appellant.

No. ED 81563.

Missouri Court of Appeals,
Eastern District,
Division Five.

Nov. 4, 2003.

---

**590**

William J. Swift, Columbia, MO, for appellant.

John M. Morris, Dora Fichter (co-counsel), Jefferson City, MO, for respondent.

## *OPINION*

GLENN A. NORTON, Presiding Judge.

Akimrazie Kelly appeals the judgment entered on his conviction for possession of a controlled substance. We affirm.

### I. BACKGROUND

At 10:45 p.m., three police officers were patrolling for illegal activity on a block of a "known drug area" where they had "had prior dealings." They were driving in an unmarked detective car with an antenna on the back. The officer who was driving wore a police raid jacket with "police" written on the front and "St. Louis Police" written on the back; the officer riding in the backseat also wore a police raid jacket that said "police" "down the side" and "St. Louis Police" on the back. Otherwise, the officers were in plain clothes.

The officers saw Kelly standing alone on the sidewalk in front of a residence; he caught their attention because they had "had prior dealings" with that residence.

As they pulled the car up to the curb along side of Kelly, the driver shined a million-watt hand-held spotlight on Kelly. The passenger side of the car was closest to Kelly, and the officer in the backseat was about five feet from him. Kelly looked in the officers' direction and then ran up a double set of stairs that led from the sidewalk up to the residence. The officers testified that this behavior in a known drug area was suspicious, so two of the officers chased after him, while the driver kept the spotlight on Kelly. One of the officers followed Kelly up the steps. He saw Kelly pull his hand out of a pocket and, as he put it towards his mouth, something fell to the ground on the landing between the two sets of stairs. The officer was right behind him at this time and saw that what had fallen was a clear plastic bag containing an off-white rock substance, which the officer believed to be crack cocaine. At that point, the officer told Kelly to stop and grabbed his arm. When Kelly resisted, the other officer struck his leg and Kelly was handcuffed. The officers took the bag containing what turned out to be crack cocaine.

The jury found Kelly guilty of possession of a controlled substance, and Kelly appeals.

## II. DISCUSSION

### A. Mistrial for Admission of Propensity Evidence

Kelly objected to the testimony that he caught the officers' attention because he was standing in front of a residence with which they had "had prior dealings." Kelly's request for a mistrial on the grounds that this testimony created an inference that Kelly or his family were drug dealers or involved in drug activity was denied. Mistrial is a drastic remedy that should be granted only in extraordinary circumstances. *State v. Parker*, 886 S.W.2d 908, 922 (Mo. banc 1994). We review the denial of a request for a mistrial for abuse of discretion. *State v. Spencer*, 50 S.W.3d 869, 876 (Mo.App. E.D.2001). There was no abuse of discretion here.

It is well-settled that evidence of uncharged misconduct is inadmissible for the purpose of showing a defendant's propensity to commit crimes. *State v. Driscoll*, 55 S.W.3d 350, 354 (Mo. banc 2001). Evidence runs afoul of this rule if it shows that the defendant has committed, been accused of, been convicted of, or definitely been associated with another crime. *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc 1989). Vague and indefinite references to misconduct, however, do not warrant mistrial. *Id.; see also State v. Willis*, 10 S.W.3d 156, 158 (Mo.App. E.D.1999). Unless the reference is clear evidence of the defendant's involvement in another crime, denying a mistrial is not an abuse of discretion. *Hornbuckle*, 769 S.W.2d at 96; *Willis*, 10 S.W.3d at 158.

The testimony in this case was not clear evidence of another crime. The police officer's comment about unspecified prior dealings with the residence in front of which Kelly was standing did not refer to any specific criminal act by Kelly or anyone living at that residence and did not definitely associate him with another crime. This reference was too vague to warrant a mistrial. *See Willis*, 10 S.W.3d at 158 (not abuse to deny mistrial for reference to defendant's gang membership because no reference to specific crime by defendant or gang); *State v. Riggins*, 987 S.W.2d 457, 462 (Mo.App. W.D.1999) (not abuse to deny mistrial for witness's remark that he knew defendant "from the penitentiary" because it was vague, indefinite and did not show defendant convicted of crime); *see also State v. Crooks*, 64 S.W.3d 887, 892 (Mo.App. S.D.2002) (not

plain error to admit testimony that undercover officer had been to defendant's home with confidential informants who used and sold drugs because it did not implicate defendant in prior criminal activity); *State v. Boulware,* 923 S.W.2d 402, 406 (Mo.App. W.D.1996) (not plain error to deny mistrial for remark about defendant's parole officer because it was vague, indefinite and did not refer to specific crime).

The cases on which Kelly relies are wholly inapplicable because in each, the conviction was reversed and remanded for a new trial based on the admission of clear evidence that the defendant had been involved in other illegal drug transactions. *See State v. Parker,* 988 S.W.2d 93, 96 (Mo.App. S.D.1999) (informant testified about other purchases of cocaine from defendant); *State v. Dudley,* 912 S.W.2d 525, 530 (Mo.App. W.D.1995) (state introduced evidence of defendant's prior conviction for selling codeine); *State v. Owen,* 753 S.W.2d 114, 114–15 (Mo.App. S.D.1988) (undercover officer testified about other sale of marijuana to defendant).

Point I is denied.

## B. Admission of Drugs

▮ In his second point, Kelly contends that the court erred by refusing to suppress admission of the drugs into evidence. He argues that the officers had no probable cause or reasonable suspicion to believe that Kelly was involved in a crime when they seized him and, therefore, the drugs they recovered were the fruits of an illegal seizure in violation of the Fourth Amendment of the United States Constitution. The State argues that the drugs were in plain view and, thus, were properly seized and admitted at trial. We agree with the State.

▮ On review of the trial court's decision not to suppress evidence, we view the facts and any reasonable inferences

therefrom in the light most favorable to that decision and disregard any contrary evidence and inferences. *State v. Lewis,* 17 S.W.3d 168, 170 (Mo.App. E.D.2000). "If the trial court's ruling is plausible in light of the record viewed in its entirety, this court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* Nevertheless, we must consider whether the ruling is a proper application of Fourth Amendment precepts. *State v. Stevens,* 845 S.W.2d 124, 128 (Mo.App. E.D.1993).

▮ The plain view exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be. *State v. Rutter,* 93 S.W.3d 714, 724 (Mo. banc 2002) (citing *Washington v. Chrisman,* 455 U.S. 1, 5–6, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982)).

> [A] person's reasonable expectation of privacy diminishes as to items that are readily visible in an otherwise private location into which police are invited or a public location to which all have access. Under this exception, an officer who is lawfully located in a place from which the object can plainly be seen may seize the object so long as there is probable cause to believe that the object is connected to the crime.

*State v. Johnston,* 957 S.W.2d 734, 742 (Mo. banc 1997).

There is no question that in this case the bag that fell from Kelly's possession was readily visible, it contained what was clearly contraband and the officer had probable cause to believe that it was connected to the crime of possessing a controlled substance. But the area from which the officer viewed the drugs was not a public

street, as the State asserts in its brief, where, of course, the officer would have had a right to be. Rather, the testimony clearly shows that the officer was already at or near the top of the first set of stairs leading from the public sidewalk to the private residence when he observed the drugs that had fallen on the landing. Thus, the issue is whether the officer was lawfully on this private property.

 The Fourth Amendment inherently acknowledges the sanctity of one's home and extends protection to the curtilage thereof, including all "out-buildings" connected with or close to the residence, such as garages, sheds, barns, yards and lots. *State v. Schweitzer*, 879 S.W.2d 594, 596 (Mo.App. E.D.1994); *State v. Fierge*, 673 S.W.2d 855, 856 (Mo.App. E.D.1984). Whether a particular area is curtilage depends on four factors: (1) the proximity of the area to the home; (2) whether the area is within an enclosure surrounding the home; (3) how the area is used; and (4) the steps taken to protect the area from observation by people passing by. *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987); *see also Schweitzer*, 879 S.W.2d at 596.

 While Fourth Amendment protections extend to curtilage areas, that does not mean that police cannot enter a curtilage area without a warrant. *State v. Edwards*, 36 S.W.3d 22, 26 (Mo.App. W.D. 2000). "To the contrary, 'it is altogether proper for police with legitimate business to enter the areas of curtilage open to the public.'" *Id.* (quoting *State v. Kriley*, 976 S.W.2d 16, 22 (Mo.App. W.D.1998)); *see also State v. Akers*, 723 S.W.2d 9, 14 (Mo. App. W.D.1986). Whether a particular area of curtilage is deemed open to the public is determined on a case by case basis. *Edwards*, 36 S.W.3d at 27. The analysis is similar to the determination of whether the area is curtilage in the first

place; in both analyses, the key is whether the occupant of the premises has somehow exhibited a reasonable expectation of privacy in the area:

> "If in a particular case an occupant has taken effective steps to protect areas of the property from view and from uninvited visitors, then a privacy interest may be found in that area sufficient to preclude police from coming onto it for investigative purposes without permission." Alternately, "[i]f an occupant permits visitors to enter onto portions of the property, such as the driveway or front walk, so as to reach the door, or if such areas are visible from outside the property, then the occupant is generally held not to have a reasonable expectation of privacy in those portions of the property."

*State v. Pacheco*, 101 S.W.3d 913, 918–19 (Mo.App. S.D.2003) (quoting *Edwards*, 36 S.W.3d at 27).

From the photographs in the record, it appears that these stairs were close to the front porch of the house, but the area was not enclosed or protected from observation by passersby in any way and was entirely visible from the public street. There is no evidence as to how this area was used, but we can reasonably infer from the photographs that it was used, at least in part, for access from the sidewalk to the residence. It does not appear that any measures had been taken to protect the area from public view or uninvited visitors. We conclude that even if this was curtilage because of its proximity to the home, it was open to the public and, therefore, subject to warrantless entry by police with legitimate business.

 While not necessarily required to legitimate the officer's business, if an officer has reasonable suspicion to conduct an investigative stop under *Terry v. Ohio*,

392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), then entry onto curtilage open to the public in furtherance of that investigation must be legitimate business. In this case, the officers entered the curtilage area in pursuit of Kelly after he fled at the sight of a detective car pulling up to him and flashing a spotlight on him in an area known for illegal drug activity. If these facts would have justified a *Terry* stop on the public street, then following Kelly as he fled up the front stairs to effectuate that stop was legitimate and the officers were lawfully on the property when they plainly viewed the drugs. We find that these are specific articulable facts that, taken with the rational inferences they raise, show the officers had reasonable suspicion that criminal activity was afoot and justification to attempt to stop Kelly under *Terry* and its progeny. *See generally United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).[1]

 When evaluating reasonable suspicion, courts consider the totality of the circumstances, including factors that may be consistent with innocent conduct when considered alone, but that, when taken together, may amount to reasonable suspicion. *Sokolow*, 490 U.S. at 8, 9–10, 109 S.Ct. 1581; *see also Stevens*, 845 S.W.2d at 129.

The officer, of course, must be able to articulate something more than an "in-choate and unparticularized suspicion or 'hunch.'" The Fourth Amendment requires "some minimal level of objective justification" for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means "a fair probability that contraband or evidence of a crime will be found," and the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause.

*Sokolow*, 490 U.S. at 7, 109 S.Ct. 1581 (internal citations omitted). Reasonable suspicion depends on an objective assessment of the officer's actions in light of the facts known to him at the time, not on the officer's actual subjective state of mind. *Stevens*, 845 S.W.2d at 129 (citing *Maryland v. Macon*, 472 U.S. 463, 470–71, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985)).

 Evasion—the consummate act of which is flight—is a "pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Flight "is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.* at 125, 120 S.Ct. 673 (unprovoked flight from uniformed officers in high crime area justified reasonable suspicion of criminal activity and stop to investigate further).[2] This is true even though there

---

**1.** We must make clear that Kelly was not "seized" for Fourth Amendment purposes until he was grabbed at the top of the stairs—*after* the drugs were seen in plain view. Kelly's argument that the seizure began when the officers pulled up to him and shined the spotlight on him is defeated by the holding in *California v. Hodari*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). *See also State v. Johnson*, 863 S.W.2d 361, 362–63 (Mo.App. E.D.1993). Thus, while we find *Terry* stop cases and reasonable suspicion analyses instructive for the sake of determining whether the officers had legitimate reasons

for going up Kelly's front steps and were lawfully on the property when they plainly viewed the drugs, there was no *Terry* stop here.

**2.** Kelly attempts to distinguish *Wardlow* by claiming that, unlike the suspects in that case, his flight was "provoked." We disagree. While it is not clear what the Court meant by using the qualifier "unprovoked," the government's brief suggested that flight precipitated by threats of violence would be provoked, whereas flight from a patrol car approaching with light flashing and sirens blaring would

are also innocent reasons for fleeing from the police. *Id.* Even where the conduct articulated as justification for the stop is ambiguous and susceptible of an innocent explanation, if it also suggests criminal activity, then detention to resolve the ambiguity does not violate the Fourth Amendment. *Id.* (citing *Terry*, 392 U.S. at 5–6, 30, 88 S.Ct. 1868).

 Here, the fact that the officers were not in full uniform or a marked patrol car with roof lights does not automatically defeat the relevance of Kelly's evasive behavior. If the officers had been truly undercover—i.e., had not been wearing police raid jackets or driving a detective car that one officer testified was known in that area to be a police vehicle and was not meant to "fool" anyone—and had not shined a million-watt spotlight on Kelly, then it might have been objectively *un*reasonable to infer from Kelly's flight that criminal activity was afoot. *See, e.g., United States v. Jones*, 619 F.2d 494, 498 (5th Cir.1980) (evasive behavior and flight from plainclothes officers in unmarked car "exhibiting *no indicia of lawful authority*" was natural innocent reaction not supportive of reasonable suspicion) (emphasis added). But under the totality of these circumstances, including that this was a block known for illegal drug activity, such an inference is not unreasonable. "[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further

investigation." *Wardlow*, 528 U.S. at 124, 120 S.Ct. 673 (presence in high crime area, without more, does not support reasonable suspicion of criminal activity, but is "among the relevant contextual considerations in a *Terry* analysis").

At the very least, Kelly's flight from plain-clothed officers shining a spotlight on him from an unmarked car was ambiguous. While it may have an innocent explanation—on appeal, Kelly claims that a reasonable person in that neighborhood would have fled to avoid a drive-by shooting—it may also suggest consciousness of guilt for a crime. Thus, the police were justified in attempting to conduct a *Terry* stop to resolve the ambiguity, and the officers had a right to follow Kelly along a route of public access to his residence in an effort to do so. *See Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (Fourth Amendment does not require officer who lacks probable cause "to simply shrug his shoulders and allow a crime to occur or a criminal to escape"; rather "it may be the essence of good police work to adopt an intermediate response"); *see also, e.g., Jester v. State*, 229 Ga.App. 490, 494 S.E.2d 284, 286–87 (1997) (officers had reasonable articulable basis to stop suspect and so were justified in chasing fleeing suspect onto curtilage).

In sum, construing the facts favorably to the trial court's decision, the officers were lawfully in pursuit of Kelly when they entered the area surrounding his home.

---

be unprovoked. *See Wardlow*, 528 U.S. at 130 n. 5, 120 S.Ct. 673 (J. Stevens concurring in part and dissenting part). Likewise, other courts have discussed that the distinction is between *improper* provocation—like fraud—and the provocative effect that police presence has, in the sense that it can motivate flight. *See, e.g., United States v. Franklin*, 323 F.3d 1298, 1303 n. 4 (11th Cir.2003). Here, as in *Wardlow*, there was no improper provocation; rather, in both instances, the flight

was motivated by the presence of police officers lawfully showing their authority (in *Wardlow*, by uniformed officers approaching in a caravan; here, by, if nothing else, the use of a spotlight). *See also Franklin*, 323 F.3d at 1302 (suspect who fled when officers got out of marked police van not improperly provoked); *see also Wilson v. United States*, 802 A.2d 367, 371 (D.C.2002) (merely looking at and starting toward suspect not provocation).

Thus, the drugs observed in plain view from that lawful vantage point were properly seized and admitted at trial. The trial court's ruling was plausible in light of the whole record, and we cannot reverse even if we would have weighed the evidence differently.

Point II is denied.[3]

## C. Quashing the Venire Panel

 In his third point, Kelly argues that the trial court abused its discretion by refusing to quash the venire panel after one venire person was disqualified for stating that he believed that the defendant was guilty because he was black. The panel from which this venireperson was disqualified produced only alternate jurors who did not deliberate. We have reviewed the parties' briefs and the record on appeal on this point and find no abuse of discretion or evidence that Kelly's right to a fair trial was infringed. *See State v. Evans*, 802 S.W.2d 507, 514 (Mo. banc 1991). No jurisprudential purpose would be served by further discussion of this point, and it is denied in accordance with Rule 30.25(b).

## III. CONCLUSION

The judgment is affirmed.

KATHIANNE KNAUP CRANE, J., and MARY K. HOFF, J., concurring.

---

**3.** Because the drugs were admissible under the plain view exception to the Fourth Amendment warrant requirement, we need not address the State's other contention that the abandonment exception applies.