**STATE of Missouri, Plaintiff–Appellant,**

v.

**Marty Joe BATES, Defendant–Respondent.**

**No. SD 30701.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 13, 2011.

Rehearing Denied June 7, 2011.

Application for Transfer
Denied Aug. 30, 2011.

Chris Koster, Attorney General, Karen L. Kramer, Assistant Attorney General, Jefferson City, MO, for Appellant.

Margaret M. Johnston, Columbia, MO, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Marty Joe Bates ("Defendant") was charged with trafficking drugs in the second degree, a violation of section 195.223.9.[1] Defendant moved to suppress physical evidence found during the search of a shed located on his property behind his trailer home. After a hearing, the motion to suppress was granted. The State appeals, arguing the Fourth Amendment was not violated or, in the alternative, suppression was improper because the evidence was admissible under the inevitable discovery doctrine. We affirm.

In the light most favorable to the trial court's ruling, *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007), the following evidence was presented at the suppression hearing. On June 14, 2009, two Oregon County sheriff's deputies and two bail bondsmen went to Defendant's residence because the bondsmen thought Robert Threlkeld, who was delinquent on a bond and also a fugitive on an active outstanding driving-related warrant, was at the Defendant's house. The bondsmen were told earlier in the day that Threlkeld's vehicle, a dump truck, might be at Defendant's residence. In accordance with Missouri law, specifically section 374.757, RSMo 2000, the bondsmen notified the Oregon County Sheriff's Department that they were going to attempt to apprehend Threlkeld at Defendant's residence and the two deputies agreed to accompany the bondsmen to Defendant's house. The deputies secured a copy of the arrest warrant from a neighboring county and planned on making the arrest.

When the two deputies and two bondsmen arrived at Defendant's residence, located fifty-to-seventy-five feet down a driveway off of Highway AA, Threlkeld's

---

1. All references to statutes are to RSMo Cum. Supp.2006 unless otherwise specified.

dump truck was no longer there. Nevertheless, one deputy and one bondsman stationed themselves at the residence's front door, while the other deputy and bondsman circled around to the back of the residence in case Threlkeld tried to escape out of the back of the house.[2] Before the deputy initially knocked on the front door, the deputy who went to cover the back of the house discovered a marijuana plant in a bucket on a stone pathway located behind the rear-corner of the house, six feet from the back of the home. The marijuana plant was not visible from the front or side of the residence. A female subsequently answered the door and refused to consent to a search. One of the deputies executed a protective sweep of the house and shortly thereafter a search warrant was obtained. The deputies also walked the perimeter of the backyard, searching for Threlkeld.

Methamphetamine was found in a shed on Defendant's property during the execution of the search warrant. The trial court found that the marijuana plant was discovered by the deputy during a search of Defendant's property and that search violated Defendant's Fourth Amendment rights. As a result, the trial court found that evidence discovered during the search conducted pursuant to the search warrant, of which the marijuana plant formed the probable cause, was tainted fruit of the poisonous tree. The trial court suppressed the evidence.

The State raises two points on appeal. The State's first point argues that the initial discovery of a marijuana plant on Defendant's property that formed the probable cause for the search warrant of Defendant's residence was not obtained in violation of the Fourth Amendment. In the alternative, the State's second point argues that even if Defendant's Fourth Amendment rights were violated, suppression was improper because the evidence would have inevitably been discovered by lawful means. Whether the marijuana plant was discovered in violation of Defendant's Fourth Amendment rights is the determinative question in this appeal. If it was, and no exception to the exclusionary rule applies, the evidence found during the search of Defendant's shed is tainted fruit of the poisonous tree and was properly suppressed.

### Standard of Review

"The burden of going forward with the evidence and the risk of nonpersuasion" at a suppression hearing are "upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled." Section 542.296.6, RSMo 2000; *State v. Hampton*, 959 S.W.2d 444, 450 (Mo. banc 1997). The ruling will be affirmed if it is not clearly erroneous. *State v. Hoopingarner*, 845 S.W.2d 89, 92 (Mo.App. E.D.1993). We review the trial court's factual findings only in determining whether they are supported by substantial evidence. *Id.* The facts are viewed in the light most favorable to the ruling, and we disregard any contrary evidence and inferences. *Id.* "Where there is no dispute as to the underlying facts, the determination of the reasonableness of a search and seizure, under the Fourth Amendment, is a question of law." *State v. Kriley*, 976 S.W.2d 16, 19 (Mo. App. W.D.1998). However, if the ruling of the trial court " 'is plausible in light of the record viewed in its entirety,' " we may not reverse the ruling even if convinced we would have weighed the evidence differently if sitting as trier of fact. *Id.* (quoting

---

**2.** It is unclear how the search party knew the home had a back door, until actually going behind the residence.

*State v. Kovach,* 839 S.W.2d 303, 307 (Mo. App. S.D.1992)).

### Fourth Amendment Analysis

■ The State's first point argues that the deputy observed the marijuana plant in plain view on Defendant's property in an area open to the public, and, therefore, Defendant's Fourth Amendment rights were not violated. The narrow issue in this case is whether the deputy was performing a search of a constitutionally protected area when he found the marijuana plant.

■ The United States Constitution and the Missouri Constitution protect individuals from unreasonable searches and seizures.[3] *State v. Oliver,* 293 S.W.3d 437, 442 (Mo. banc 2009). Specifically, the Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated...." U.S. CONST. amend. IV. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *U.S. v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). For purposes of Fourth Amendment analysis, no search occurs, and the Fourth Amendment is not violated, if evidence is discovered in an area where a defendant has no reasonable expectation of privacy. *See Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983) ("If the inspection by police does not intrude upon a legitimate expectation of privacy, there is no 'search' subject to the Warrant Clause."). Whether a person has a reasonable expectation of privacy depends on a two-part inquiry, "first that a person

have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz v. U.S.,* 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). It therefore follows that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Id.* at 351, 88 S.Ct. 507.

■ The State argues that Defendant had no reasonable expectation of privacy in that the deputy observed marijuana in plain view on Respondent's property in an area open to the public, while Defendant counters that the deputy unlawfully entered the curtilage of Defendant's home when he discovered the marijuana plant. The protections of the Fourth Amendment extend beyond a house itself, to the curtilage of a house. *Oliver v. U.S.,* 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). In general, the curtilage of a home is the "area around the home to which the activity of home life extends[.]" *Id.* at 182 n. 12, 104 S.Ct. 1735. More specifically, "curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life,' *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886), and therefore has been considered part of home itself for Fourth Amendment purposes." *Oliver,* 466 U.S. at 180, 104 S.Ct. 1735.

■ Courts consider the following four factors in determining whether an area is within the curtilage of a home:

■ the proximity of the area claimed to be curtilage to the home, [2] whether the

---

**3.** "Article I, section 15 of the Missouri Constitution provides the same guarantees against unreasonable search and seizures [as the United States Constitution]; thus, the same analysis applies to cases under the Missouri Constitution as under the United States Constitution." *State v. Oliver,* 293 S.W.3d 437, 442 (Mo. banc 2009); Mo. CONST. art. I, section 15.

area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by.

*U.S. v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). The factors are useful only to the extent "they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.*

▮▮▮▮ The State concedes that Defendant's backyard was part of the curtilage of his home, but further argues that Missouri courts follow the rule that " 'when the police come on [to] private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (*e.g., walkways, driveways, porches* ), observations [made] from such vantage points are not [covered] by the Fourth Amendment.' " *State v. Kruse*, 306 S.W.3d 603, 609 (Mo.App. W.D.2010) (emphasis as stated in opinion) (quoting 1 LaFave, *Search and Seizure,* § 2.3(f) & nn. 196–98 (1996)).

Of course, whether a particular driveway, walkway, front porch, or other area of the curtilage of the home should be deemed open to the public, and thus subject to warrantless entry by the police, must be determined on a case-by-case basis. If in a particular case an occupant has taken effective steps to protect areas of the property from view and from uninvited visitors, then a privacy interest may be found in that area sufficient to preclude police from coming onto it for investigative purposes without permission.

*State v. Edwards*, 36 S.W.3d 22, 27 (Mo. App. W.D.2000). The rationale justifying an officer's warrantless presence at a residence for a legitimate investigatory purpose is that "there is no reasonable expectation of privacy subject to Fourth Amendment protection where the public at large is welcome." *Kriley*, 976 S.W.2d at 22.

We find that *Kruse* is basically indistinguishable from the present matter. In *Kruse,* officers went to Kruse's mobile-home residence shortly after midnight to search for a third party, Jeremy Beel, who had an arrest warrant which had "caution indicators," meaning the subject was considered dangerous. *Kruse,* 306 S.W.3d at 606. When the officers arrived at Kruse's residence, the vehicle Beel was driving was parked on the driveway with a flat tire. *Id.* "No trespassing" signs were posted near the front door of Kruse's trailer and on the front door of a shed at the end of the driveway on the property. *Id.* No obstructions blocked access to the backyard. *Id.* As the officers passed between the shed and the residence, without first knocking at the front door, the shed door flew open and Kruse came "bolting" out of the shed. *Id.* at 607. With the shed door open, an officer observed methamphetamine manufacturing equipment inside the shed. *Id.* A search warrant for the property was secured, pursuant to which the officers discovered various evidence of methamphetamine manufacturing. *Id.* The trial court found that the officers conducted a warrantless search of Kruse's backyard and that the search was not justified by exigent circumstances. *Id.* at 607–08. The Western District of this Court affirmed the suppression of the evidence and found that Kruse had an expectation of privacy in his backyard and that the trial court did not err in finding that exigent circumstances that would allow the officers to search the home of Kruse for Beel did not exist. *Id.* at 612.

The State encourages us not to follow *Kruse* or, in the alternative, claims *Kruse* is distinguishable. We decline the first request and disagree with the second. In *Kruse*, unlike in this case, the vehicle that police were informed that Beel was driving was at Kruse's residence. *Id.* at 606. Beel was considered violent. *Id.* In this case, Threlkeld had an outstanding warrant for driving while revoked. Despite the more compelling facts in *Kruse*, suppression of the evidence was affirmed because Kruse had an expectation of privacy in his backyard and the trial court did not err in finding that exigent circumstances did not justify the search. *Id.* at 612. Likewise, we find the trial court did not err in finding Defendant had a reasonable expectation of privacy in his backyard. In the light most favorable to the trial court's ruling, the evidence was discovered on "property as to which there was a privacy interest protected by the Fourth Amendment."[4] *Id.* We believe Kruse is controlling precedent and not meaningfully distinguishable.

■■■ Whether a person exhibits a reasonable expectation of privacy in an area is a mixed question of law and fact. In reviewing a trial court's ruling on a motion to suppress, this Court gives great deference to the fact findings of the trial court. *Hoopingarner*, 845 S.W.2d at 92. As in *Kruse*, the intention of the deputies in this case "was a factual inference drawn by the trial court based on observing the testimony." *Kruse*, 306 S.W.3d at 612. "Our review is only for an abuse of discretion; the decision will be affirmed unless it is 'clearly erroneous'" *Id.* (quoting *State v. McDonald*, 170 S.W.3d 535, 537 (Mo.App. W.D.2005)). In light of the trial court's observation of the witnesses and infer-

ences drawn therefrom, the trial court's ruling was not clearly erroneous.

The State's first point is denied.

### Inevitable Discovery

■■■ In its second point, the State argues that, assuming Defendant's Fourth Amendment rights were violated, suppression was improper because the evidence would have inevitably been discovered. The inevitable discovery rule precludes application of the exclusionary rule when the prosecution can prove that illegally discovered evidence ultimately or inevitably would have been discovered by lawful means. That is, when "the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible." *Nix v. Williams*, 467 U.S. 431, 448, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

The State argues that even if the deputies had not accompanied the bondsmen to Defendant's house, the bondsmen would have still covered the back entrance of the house, and, in doing so, would have seen the marijuana plant, and further, would have reported the discovery of the marijuana plant to the police who, then, would have obtained a search warrant for Defendant's residence and searched Defendant's shed and found the methamphetamine. The State contends:

It is reasonably inferable that had law enforcement not known about the plant themselves, [the bondsmen] would have informed them, given that the bondsmen had demonstrated that they were law-abiding citizens who cooperated with law enforcement by following the laws and

---

4. Law enforcement are permitted to legally search for the subject of an arrest warrant in the home of a third party without a search warrant only when the search was consented to or exigent circumstances exist. *Steagald v. U.S.*, 451 U.S. 204, 216, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).

informing the Sheriff's Office of their attempt to apprehend Threlkeld.

That assumption-based argument is pure speculation.[5]  Point II is denied.

The judgment is affirmed.

SCOTT, C.J., Concurs in result.

FRANCIS, J., Concurs.

---

**5.**  "[I]nevitable discovery analysis cannot involve speculation and must focus on demonstrated historical facts capable of ready verification or impeachment."  *State v. Rutter,* 93 S.W.3d 714, 726 (Mo. banc 2002).