STATE of Missouri, Respondent,

v.

Randy S. HARTRUP, Appellant.

No. ED 104429

Missouri Court of Appeals, Eastern District, **DIVISION TWO.**

Filed: February 28, 2017

Rachel S. Flaster, Jefferson City, MO, for Respondent.

Theodore Guberman, Hillsboro, MO, for Appellant.

## OPINION

Colleen Dolan, Judge

Randy Hartrup ("Defendant") appeals his conviction of one count of manufacturing marijuana, a controlled substance, under § 195.211.[1] Defendant argues his motion to suppress should have been granted because the evidence was the product of an unconstitutional search within the curtilage of his home, where he had an expectation of privacy that was violated pursuant to the Fourth Amendment of the United States Constitution and article I, section 15 of the Missouri Constitution. The trial court did not plainly err in denying the motion to suppress because the evidence was seized constitutionally under the plain view exception. We therefore affirm the judgment of the trial court.

## I. Factual and Procedural Background

On July 10, 2013, Sergeant Donald Crump ("Sergeant Crump"), Officer S.D. Thompson ("Officer Thompson"), and Trooper Tim Craig went to Defendant's address to investigate an anonymous tip that Defendant was growing marijuana outside his mobile home. The property at the address had a driveway with a mobile home on the left and a house on the right. The mobile home was situated perpendicular to the road and parallel to the driveway. The officers approached the mobile home to conduct a "knock and talk" investigation. The officers first knocked on the door that faced the driveway, and no one answered. Sergeant Crump testified that Officer Thompson then proceeded around to the back of the mobile home, encountering no obstacles, to ascertain whether there was another door on which to knock. At the rear corner of the home, Officer Thompson observed a picnic table approximately one foot from the home with a pot on top of it containing eight marijuana plants. During cross-examination, the defense attorney showed Sergeant Crump a picture of the scene depicting a large bush, and the officer confirmed that it blocked the view of the marijuana plants from the front door. After Officer Thompson alerted Sergeant Crump to the plants, the officers continued their attempt to make contact with an owner of the property. They knocked on the door of the house across the driveway, which Defendant's mother answered. After speaking with her and asking her to have Defendant contact them, the officers seized the plants.

The State charged Defendant with one count of manufacturing a controlled substance, a class B felony. The trial court found Defendant guilty and sentenced him to six years. Defendant now appeals.

## II. Standard of Review

■■■ When reviewing a motion to suppress evidence, this Court will not reverse the trial court unless the decision was clearly erroneous. *State v. Ivy*, 455 S.W.3d 13, 17 (Mo. App. E.D. 2014). We view all facts in the light most favorable to the ruling, disregarding any contrary evidence and inferences. *State v. Kelly*, 119 S.W.3d 587, 592 (Mo. App. E.D. 2003). "If the trial court's ruling is plausible in light of the record viewed in its entirety, this court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* While we defer to the trial court's factual findings and credibility determinations, Fourth Amendment violations present an issue of law and are reviewed *de novo*. *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc. 2007).

---

1. All references are to RSMo Cum. Supp. 2003.

## III. Legal Background

The Fourth Amendment to the United States Constitution and article 1, section 15 of the Missouri Constitution confer on individuals the right to be free from unreasonable search and seizure where society recognizes a reasonable expectation of privacy exists. *State v. Bates*, 344 S.W.3d 783, 787 (Mo. App. S.D. 2011).[2] However, when evidence is found in a location open to the public with no reasonable expectation of privacy, no search—and no constitutional violation—occurs. *Id.* at 787–88.

A reasonable expectation of privacy generally extends to a person's home and its curtilage. *Missouri v. Pierce*, 504 S.W.3d 766, 769 (Mo. App. E.D. 2016). The "curtilage" of a home is the enclosed space of ground and buildings immediately surrounding a dwelling. *Id.* Curtilage includes, for example, porches, yards, garages, and sheds. *Kelly*, 119 S.W.3d at 593. Four factors are used to determine whether an area is within the curtilage of the home: "(1) the proximity of the area to the home; (2) whether the area is within an enclosure surrounding the home; (3) how the area is used; and (4) the steps taken to protect the area from observation by people passing by." *Id.* (citing *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987)). These same factors may be used to decide, on a case-by-case basis, whether an area of curtilage is open to the public. *Id.* Law enforcement officers may be present on areas of curtilage open to the public absent a warrant without incurring a Fourth Amendment violation. *Id.* Indeed, "it is altogether proper for police with legitimate business to enter the areas of curtilage open to the public." *State v. Edwards*, 36 S.W.3d 22, 26 (Mo. App. W.D. 2000).

When deciding whether a given area is within the curtilage of a home and whether that area is open to the public, "the key is whether the occupant of the premises has somehow exhibited a reasonable expectation of privacy in the area." *Kelly*, 119 S.W.3d at 593. "If in a particular case an occupant has taken effective steps to protect areas of the property from view and from uninvited visitors, then a privacy interest may be found in that area sufficient to preclude police from coming onto it for investigative purposes without permission." *Edwards*, 36 S.W.3d at 27.[3] Missouri courts have found that "normal means of public access to the residence doors" do not carry a reasonable expectation of privacy and are not protected by the Fourth Amendment. *Id.* Thus, under the plain view exception to the Fourth Amendment, "evidence found in plain view along those means of public access" may be seized by an officer, even without a warrant, and admitted as evidence without

---

2. These two provisions "provide[ ] the same guarantees against unreasonable search and seizures; thus, the same analysis applies to cases under the Missouri Constitution as under the United States Constitution." *State v. Oliver*, 293 S.W.3d 437, 442 (Mo. banc 2009).

3. *See Pierce*, 504 S.W.3d at 771 (finding the resident had reasonable expectation of privacy in fenced chicken coop near the home in part because a fence "strongly suggests the desire of the property owner for privacy"); *see State v. Berry*, 92 S.W.3d 823, 830 (Mo. App. S.D. 2003) ("Appellants took the necessary steps to demonstrate that they had a reasonable expectation of privacy in the fenced area" where a fence and guard dogs "discourage[d] unwanted visitors"); *see State v. Schweitzer*, 879 S.W.2d 594, 595 (Mo. App. E.D. 1994) (finding the resident had reasonable expectation of privacy where property was blocked by a steel gate secured with an iron chain and padlock); *cf.Kelly*, 119 S.W.3d at 593 (finding stairs were visible to public from the street and no measures had been taken to protect the area from visitor access).

infringing on the occupant's constitutional rights. *Id.*

Missouri courts have held that "knock and talk" investigations by officers do not violate occupants' constitutional rights. *State v. Kriley,* 976 S.W.2d 16, 22 (Mo. App. W.D. 1998). During a "knock and talk" investigation, in which law enforcement officers receive a tip about drug activity that they believe has merit but is insufficient to obtain a warrant, the "officers are legally permitted to knock on the door of a private residence and seek consent to enter and search without probable cause or a warrant." *State v. Nebbitt,* 455 S.W.3d 79, 90–91 (Mo. App. E.D. 2014). "[W]hen the police come on private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (*e.g., walkways, driveways, porches* ), observations from such vantage points are not restricted by the Fourth Amendment. " *State v. Kruse,* 306 S.W.3d 603, 609 (Mo. App. W.D. 2010).

## IV.   Discussion

### a.   The trial court did not err in denying Defendant's motion to suppress evidence.

Defendant argues that the officers' seizure of the evidence violated his constitutional rights because the seizure took place within the curtilage of the home where Defendant had an expectation of privacy. Accordingly, Defendant states the evidence did not fall under the plain view exception and should have been suppressed as the fruit of an unconstitutional search. At issue in this case is whether the officer's act of going from the front of Defendant's mobile home to the back constituted a search requiring a warrant. The

trial court held that it was not a search, and we agree.

### 1.   Defendant had no expectation of privacy where the evidence was found.

"Whether a person exhibits a reasonable expectation of privacy in an area is a mixed question of law and fact...[and] this Court gives great deference to the fact findings of the trial court." *Bates,* 344 S.W.3d at 789. Here, the trial court found Defendant had no reasonable expectation of privacy in the rear side of the mobile home, visible from the adjacent residence, where eight marijuana plants sat in a pot on a picnic table within one foot of the home. Among the four factors articulated in *Dunn,* the key to determining whether an area of curtilage exhibits an expectation of privacy is whether the "occupant has taken effective steps to protect areas of the property from view and from uninvited visitors[.]" *Id.* at 788 (quoting *Edwards,* 36 S.W.23 at 27). Enclosures and obstacles demonstrate effective steps to create privacy—such as fenced areas, garages, and sheds.[4] Here, the only proffered evidence of steps taken to protect sight of the marijuana from where the public accesses the home was its placement behind the home and a photograph showing a bush blocking the view of the side of the mobile home from the front door. A rational fact-finder could determine that the evidence sitting on a table behind a home, where visitors may find a second door and which was visible from the adjoining home, did not constitute effective steps to maintain a reasonable expectation of privacy.

### 2.   The evidence was in plain view.

"The plain view exception to the Fourth Amendment warrant require-

4.   *See supra* note 3.

ment permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be." *Kelly*, 119 S.W.3d at 592. The doctrine "provides that anything an individual knowingly exposes to public view...involves no reasonable expectation of privacy and is not a subject of Fourth Amendment protection." *Kruse*, 306 S.W.3d at 609. Given that Defendant did not have a reasonable expectation of privacy in the area of curtilage where the evidence was seen, from the lawful vantage point of the officer, the evidence is admissible under the plain view exception. *See Edwards*, 36 S.W.3d at 27.

The officer was lawfully present in the curtilage of Defendant's home when he was seeking a second door on which to knock and make contact with the resident. Having knocked on the door closest to the driveway with no response, Sergeant Crump testified that Officer Thompson proceeded around the home to look for another door. Residential doors often invite public access and have no reasonable expectation of privacy *Edwards*, 36 S.W.3d at 26–27. The intention of the officer "was a factual inference drawn by the trial court based on observing the testimony." *Bates*, 344 S.W.3d at 789 (quoting *Kruse*, 306 S.W.3d at 612). The *Bates* and *Kruse* courts deferred to the findings of the trial courts, and we do the same. *Id.*; *Kruse*, 306 S.W.3d at 608. Here, the trial court drew factual inferences that the officers knocked first and then went behind the home intending to knock and talk only, not conduct a search. We defer to the trial court's finding that Officer Thompson was looking for a second door on which to knock as part of a lawful "knock and talk" investigation.

This point distinguishes this case from *Bates*, which Defendant relies on, because

there the officers were not lawfully present in the backyard. 344 S.W.3d at 789. In that case, the Southern District affirmed the trial court's suppression of marijuana evidence taken from a bucket found on a stone pathway six feet behind the home. *Id.* at 785–86. The officers did not knock on the front door but rather conducted a search by going to the back of the home to prevent possible escape. *Id.* at 786. *Bates* echoes the finding in *Kruse* that in the absence of exigent circumstances it is generally unreasonable for officers to proceed to the back of an individual's house before knocking on the front door, which usually infringes on a reasonable expectation of privacy. *Id.* at 788–89; *Kruse*, 306 S.W.3d at 612. In fact, the Southern District in *Bates* noted "[w]e find that *Kruse* is basically indistinguishable from the present matter." *Bates*, 344 S.W.3d at 788. In *Kruse*, the Western District stressed the importance of officers knocking on the front door before moving towards the backyard: "[t]his is not a case where the police officers merely knocked on the front door to ask whether [the man they were seeking] was present. *Kruse*, 306 S.W.3d at 612. The officers went into the back yard before trying the front door." *Id.* Contrastingly, in the present case, the officers first knocked on the front door and then sought another door at which to talk with the resident. Thus, the officers were not conducting a search or violating the Fourth Amendment when they entered the curtilage of the home with the intention to knock on the door and speak with a resident there. *Bates*, 344 S.W.3d at 788–89.

The State supplements the "knock and talk" explanation with Eighth Circuit case law showing it is within the purview of officers to try an alternate door if they do not get a response at the front door. *United States v. Anderson*, 552 F.2d 1296, 1300 (8th Cir. 1977). Officers may go to the back of the residence when attempting in good

faith to make contact with the residents without implicating a privacy concern. *United States v. Raines*, 243 F.3d 419, 421 (8th Cir. 2001). While Defendant points to an alternative inference—that the tip was about marijuana being grown outside Defendant's home, therefore the officer may have purposely circled the residence hoping to find marijuana—"[w]e defer to the trial court's factual findings and credibility determinations." *Pierce*, 504 S.W.3d at 769. Defendant did not adduce any evidence to contradict the officer's testimony, and we hold under these particular circumstances the officers' purpose was to knock and talk, not search. Therefore, the entry on the curtilage comported with the Fourth Amendment, and the marijuana was in plain view of the officer.

## V. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

Sherri B. Sullivan, P.J., concurs.

Roy L. Richter, J., concurs.